UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| BILL CROSBY ET AL. | * | CIVIL ACTION NO. 16-6700 |
| --- | --- | --- |
| VERSUS | * | DIVISION: 1 |
| COX COMMUNICATIONS, INC. ET AL. | * | MAGISTRATE JUDGE JANIS VAN MEERVELD |

## ORDER AND REASONS

Before the Court is the Motion for Summary Judgment filed by defendant Cox Communications, Inc. ("Cox").[1] (Rec. Doc. 50). For the following reasons, IT IS ORDERED that the Motion for Summary Judgment is GRANTED.

### Background

This lawsuit is a putative collective action under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, and a putative class action under Louisiana's wage payment laws, La. Rev. Stat. § 23:631, *et seq.*[2] Plaintiffs Bill Crosby, Larry Walker, and Byron Taylor ("Plaintiffs") allege that Cox and Superior Telecom Services, Inc. ("Superior") are liable as their employers for failing to pay them and other installers and technicians for work in excess of 40 hours in a work week and for failing to keep records in accordance with FLSA. On October 17, 2016, the District Judge dismissed Superior without prejudice because Plaintiffs had failed to serve this defendant. (Rec. Doc. 32).

The parties consented to proceed before the undersigned Magistrate Judge, and on January 3, 2017, the District Judge ordered the matter be referred to the undersigned pursuant to 28 U.S.C.

---

[1] While maintaining that it should not be subject to this lawsuit at all, Cox indicates it was improperly named and that the appropriate party should be Cox Communications Louisiana, LLC.
[2] The District Court dismissed the Plaintiffs' claims under La. Rev. Stat. § 23:631 and § 23:632, but declined to dismiss the Plaintiffs' claim under § 23:635. (Rec. Doc. 34).

1

§ 636(c). (Rec. Doc. 43). The parties also agreed to resolve issues related to the alleged liability of Cox as a joint employer first, with Plaintiffs' motion for conditional class certification to follow thereafter. In the present Motion for Summary Judgment, Cox maintains that as a matter of law, it is not Plaintiffs' employer under the FLSA and it must be dismissed from this lawsuit. (Rec. Doc. 50-1). Plaintiffs oppose. (Rec. Doc. 55).

Undisputed Facts

a. *Superior-Cox Relationship*

Cox provides cable, telephone and Internet services to residences and businesses in Louisiana and elsewhere in the United States. To access these services, Cox's customers buy cable equipment from Cox. Cox contracts with third parties to provide installation and maintenance services to Cox's customers. Superior provided these services for Cox from June 2013 until May 2016. Superior had been in business in Louisiana for at least five years when it first engaged with Cox: Mr. Crosby testified that he began working for Superior in 2008.

Cox's relationship with Superior during the relevant time period was governed by a Field Services Agreement ("FSA") between them. Pursuant to the FSA, Superior is an "independent contractor" and none of Superior's employees or representatives is to be deemed a Cox employee, agent, or representative. (FSA, ¶ 9, Rec. Doc. 50-6). It appears that Superior contracted with a company called Stargate Communication, Inc. ("Stargate") to provide the services contemplated under the FSA. Mr. Crosby testified that Superior began using Stargate to supply additional workers in 2012 or 2013. And the Plaintiffs' tax documents indicate they were paid by Stargate as independent contractors. According to Cox's Director of Field Services, Joseph Peeples, Superior was required to provide Cox with notice prior to contracting with another vendor to provide services under the FSA, but Superior did not notify Cox about Stargate. Mr. Peeples asserts that

Cox first learned of the existence of Stargate through this litigation. Cox does not have a contract with Stargate and has never issued any work orders or technician numbers to Stargate.

It is uncontested that Cox does not share office space or warehouses with Superior or Stargate. Nor does Cox have an ownership interest in Superior or Stargate. As noted above, Superior was operating in Louisiana as early as 2008, when Mr. Crosby began working for Superior. Further, Mr. Crosby testified that Superior operated in states other than Louisiana (including Florida, Virginia, Oklahoma, North Carolina and Texas), but no longer operates in Louisiana at this time. Little is known about Stargate. According to Mr. Crosby, Stargate was formed by a Superior supervisor. And, although Plaintiffs worked for Stargate, they reported to Superior's office.

  b. *Hiring and Firing*

The FSA requires that Superior "maintain adequate, qualified, experienced and professional-appearing" personnel. (FSA, ¶ 4.1, Rec. Doc. 50-5). Pursuant to the FSA, Superior agreed that it would subject all of its personnel to background checks (including drug screenings and a criminal background check) before the personnel could perform services contemplated by the FSA. Id. Cox says this policy ensures that its customers are safe and not subject to individuals who have committed crimes or use illegal drugs. The FSA requires annual background checks and authorizes Cox to request an additional background check. Id. Pursuant to the FSA, if a person does not meet the background check requirements, Superior would not continue to allow that person to perform services for Cox customers. Id. Mr. Taylor and Mr. Walker testified that Cox temporarily de-authorized them at some point, but they admit they were not terminated from Superior.[3]

---

[3] Mr. Taylor was de-authorized by Cox when the annual background check revealed his license was suspended. He admitted he was not fired from Superior or Stargate, but was on leave until he resolved the issue. Mr. Walker was de-

Plaintiffs present no evidence to contradict Mr. Peeples' declaration that Cox had no input in the decision to hire Mr. Crosby, Mr. Taylor, or Mr. Walker. It is undisputed that Cox did not hire Mr. Crosby, Mr. Taylor, or Mr. Walker directly. Mr. Crosby started working for Superior in 2008 and transferred to Stargate when Stargate started working with Superior in 2012 or 2013. Although Mr. Crosby does not recall filling out an application to work for Superior or Stargate (he transferred to each company), he testified that he never interviewed with anyone at Cox and did not submit an application to Cox. Mr. Taylor submitted an application to Superior, interviewed with a Superior supervisor, and understood that he was hired as an independent contractor for Superior. Mr. Walker completed an application for Superior but worked for Stargate and was paid by Stargate. Just as Mr. Crosby did not submit an application to Cox, neither Mr. Walker nor Mr. Taylor submitted applications to Cox, either.

When Mr. Crosby resigned, he notified Stargate he was leaving, not Cox. When Mr. Walker resigned, he notified his supervisor at Stargate. Mr. Taylor stopped working because of an injury and he filed his worker's compensation claim against Stargate, not Cox.

Plaintiffs have presented no evidence to dispute Cox's representative's declaration that Cox has no involvement or input in the hiring and firing decisions of Superior or Stargate.

c. *Supervision and Control*

When a Cox customer requests installation and maintenance services, the customer contacts Cox and selects a two-hour window of time for the service to take place. This request creates a "work order" in Cox's automated billing system. Cox has a separate computer application

---

authorized after a dispute between him and an apartment manager at one of the locations where Mr. Walker was doing work. The apartment manager called Cox to complain because of Mr. Walker's parking. Cox "pulled his tech number" the next morning and Mr. Walker was not permitted to perform installations for Cox. Mr. Walker learned he had been de-authorized from his supervisor at Superior, and he did not speak to anyone at Cox about the incident. After about three months, Mr. Walker returned to performing installations in the field.

that automatically generates bundles of work orders and sends bundles to Superior based on the resources Superior has available. Cox explains that the Superior technician numbers serve as placeholders and that Superior can assign the work orders to technicians in any manner it sees fit and Cox learns the technician number for the individual who performed the work order when the work order is completed and recorded in Cox's automated billing system. In deposition, each of the named plaintiffs agreed that Superior or Stargate can add or change the routes assigned by Cox's auto-routing system. According to Mr. Walker, Stargate sometimes added or changed jobs around to make it more convenient for the technicians. Mr. Walker also testified that Cox could add jobs through the same computer system. Mr. Crosby and Mr. Taylor testified that they contacted their supervisors at Superior or Stargate if they were sick or needed time off. Mr. Crosby, Mr. Taylor and Mr. Walker did not report to Cox supervisors, but instead were supervised by individuals with Superior or Stargate.

Plaintiffs point out that the FSA requires Superior to route work to personnel "in a manner reasonably calculated to not adversely affect the quality of the work and to not result in high first call resolution leading to chargebacks." FSA at ¶ 2.4. They add that the FSA prohibits Superior from using a technician number assigned to one personnel for another personnel without Cox's permission. (FSA, ¶ 2.1, Rec. Doc. 70-6). They also point to language in the FSA that Cox assigns work orders "on an 'as needed' basis in Cox's sole discretion." Id. ¶ 2.1.

"For safety reasons," the FSA requires that technicians "at all times represent and identify themselves as independent contractors of Cox and follow Cox's branding and identification guidelines and procedures for independent contractors." Id. ¶ 2.14. The technicians wear badges and drive vehicles stating "Authorized Vendor for Cox Communications."

Cox conducts random quality control checks and requests that its customers complete surveys. Plaintiffs do not dispute the evidence presented by Cox that it only discusses customer complaints, surveys, and quality control checks with Superior management and never with the technicians.

The FSA requires that Superior train all technicians on safety, quality and legal requirements of the agreement, including training on Cox's guidelines and requirements. Id. ¶ 2.3. Each of the Plaintiffs had prior experience installing cable. None of the Plaintiffs received any training from Cox.

Cox does not supply Superior technicians with tools or supplies to perform their work. Each of the Plaintiffs testified that they used their own tools. Cox only supplied Superior with the Cox equipment that is purchased or leased by Cox's customers. Id. ¶ 41.

*d. Payment*

In his declaration, Mr. Peeples states that Cox does not pay Stargate's or Superior's technicians and that Cox has no idea how the technicians are paid. Each of the Plaintiffs agreed in deposition that he was not paid by Cox. Mr. Crosby agreed that he was paid by Stargate and Superior. Mr. Taylor agreed that he was paid by Stargate. Mr. Walker also agreed that he was paid by Stargate. Cox submitted Mr. Crosby's 2015 tax return showing that he claimed payments from Stargate as self-employment income. Cox also provided Mr. Walker's 2015 Form 1099 issued by Stargate. Cox did not issue tax documents to the Plaintiffs.

Plaintiffs note that the FSA authorizes Cox to withhold payment from Superior to repair damage connected to the services performed or related to any failure of Superior to complete or carry out work in a timely manner. (FSA, ¶3.3, Rec. Doc. 50-5). Further, Cox's payments are contingent on Superior's "full, satisfactory and timely Completion of the Services." Id. ¶2. But,

it is uncontradicted Cox never deducted from the technicians' paychecks and never instructed Superior to do so.

   e. *Employment Records*

In his declaration, Mr. Peeples stated that the only records kept by Cox regarding Superior's technicians was the information contained on the technician's identification badge. Plaintiffs concede that there is no evidence that Cox maintained any employment records for them.

Law and Analysis

1. *Summary Judgment Standard*

Summary Judgment under Federal Rule of Civil Procedure 56 must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56. The movant has the initial burden of "showing the absence of a genuine issue as to any material fact." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). The respondent must then "produce evidence or designate specific facts showing the existence of a genuine issue for trial." Engstrom v. First Nat. Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995). Evidence that is "merely colorable" or "is not significantly probative" is not sufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"An issue is material if its resolution could affect the outcome of the action." Daniels v. City of Arlington, Tex., 246 F.3d 500, 502 (5th Cir. 2001). Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Although this Court must "resolve factual controversies in favor of the nonmoving party," it must only do so "where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc.,

713 F.3d 824, 830 (5th Cir. 2013) (quoting Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Court must not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

Summary judgment is also appropriate if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

2. *Joint Employer Liability under FLSA*

Under the Fair Labor Standards Act ("FLSA"), employers must pay their employees a minimum wage. 29 U.S.C. § 206(a). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." Id. § 203(d). "The Fifth Circuit uses the 'economic reality' test to evaluate whether there is an employer/employee relationship." Gray v. Powers, 673 F.3d 352, 354 (5th Cir. 2012). "In joint employment contexts, each employer must meet the economic reality test." Orozco v. Plackis, 757 F.3d 445, 448 (5th Cir. 2014). Thus, as to each alleged employer, "the court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Gray, 673 F.3d at 355. Not each element must be established in every case. Orozco, 757 F.3d at 448. "Moreover, '[t]he remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications.'" Id. (quoting McLaughlin v. Seafood, Inc., 867 F.2d 875, 877 (5th Cir. 1989)).

Courts in other districts have considered facts similar to those presented here, where a technician seeks to hold a communications company liable under the FLSA as a joint employer.

8

As here, the communications company contracted with an installation company to install its equipment and the technician worked as an employee or independent contractor of the installation company. In all but one of the cases the parties have presented to the Court, the district court found the communication company was not liable as a joint employer. The case cites by Cox in favor of its motion for summary judgment present facts similar to the present matter: the communication companies had no direct control or supervision of any part of the employment of the technicians with only minimal quality and safety measures such as background checks, customer service surveys, identification badges, labeled vehicles, a contract between the installer and communication company establishing certain requirements for the performance of services, work initially distributed by the communication company but subject to redistribution by the installer without consent of the communication company, and an ability of the communication company to de-authorize a technician for poor quality work.[4] See Thornton v. Charter Commc'ns, LLC, No. 4:12CV479 SNLJ, 2014 WL 4794320, at *16 (E.D. Mo. Sept. 25, 2014); Valdez v. Cox Commc'ns Las Vegas, Inc., No. 2:09-CV-01797-PMP, 2012 WL 1203726, at *6 (D. Nev. Apr. 11, 2012); Zampos v. W & E Commc'ns, Inc., 970 F. Supp. 2d 794, 805–06 (N.D. Ill. 2013); Jean-Louis v. Metro. Cable Commc'ns, Inc., 838 F. Supp. 2d 111, 137–38 (S.D.N.Y. 2011); Jacobson v. Comcast Corp., 740 F. Supp. 2d 683, 693–94 (D. Md. 2010).

The only communication company-technician case relied on by Plaintiffs differs significantly from the present because the communication company exercised far more control than Cox does here. Perez v. Lantern Light Corp., No. C12-1406, 2015 WL 3451268, at *17 (May

---

[4] Here the parties have not submitted any evidence indicating that Cox can de-authorize a technician for poor quality work. Plaintiffs only point to Cox's requirement that a technician who does not pass a background check cannot continue to enter customers' homes. It appears Plaitiffs' argument hinges on Cox's requirement that Superior personnel be subjected to annual background checks and that Superior submit its personnel to an additional background check if requested by Cox. (FSA ¶ 4.1, Rec. Doc. 70-6).

9

29, 2015 W.D. Wash.). For example, in Perez, a case filed by the Department of Labor, the installation company was prohibited by contract from engaging with other communication companies, giving greater significance to a de-authorization; the installer could not reassign work orders without at least tacit approval by the communication company; and the communication company monitored technician arrivals and departures, approved and denied time off requests, at one point required technicians to work ten-hour shifts, and maintained a significant amount of employee related documentation. Id. None of these factors are present here.

This Court recently considered a case involving a nearly identical Field Services Agreement and the same purported joint employer. Gremillion v. Cox Commc'ns Louisiana, No. 16-9849, 2017 WL 1321318, at *1 (E.D. La. Apr. 3, 2017). The facts in the present matter are similar and the arguments raised by the Plaintiffs here are identical to those raised by Mr. Gremillion (who was represented by the same attorneys as the Plaintiffs here). As described below, the Court comes to the same conclusion here: Cox is not an employer of the Plaintiff technicians.

*a. Hiring and Firing*

Cox has no authority to hire or fire Superior technicians. The contractual requirements cited by the Plaintiffs do not amount to direct or even indirect power or control over hiring and firing. For example, Cox requires that Superior maintain adequate, qualified, experienced, and professional-appearing personnel and that technicians must pass a background check before Cox will permit them to enter a Cox customer home. As this Court has previously found, these specifications amount to minimal quality controls and safety measures. They do not indicate that Cox dictates which applicants are hired or how many. The Plaintiffs have not presented any evidence to contest the declaration of Cox's representative that Cox has no involvement or input in Superior's hiring or firing decisions. Each of the Plaintiffs agreed in deposition that they did not

apply to Cox for employment. The Plaintiffs point to the FSA's requirement that Superior personnel be subjected to background checks before performing work for Cox's customers. But simply requiring a background check has not been found sufficient to conclude that a communication company possesses authority to hire and fire. E.g., Thornton, 2014 WL 4794320, at *2, 14 (finding the communication company was not a joint employer where the technicians applied and interviewed with the install company, although the communication company pre-approved technicians and required background checks); Jean-Louis, 838 F. Supp. 2d at 123-24 (finding the communication company was not a joint employer where the install company interviewed and hired technicians, although the communication company required a background check).

Without further explanation, the Plaintiffs argue that Cox can "effectively fire a Superior installer by requiring Superior to de-authorize anyone who has 'not successfully met all the Background Checks.'" (Rec. Doc. 55, at 14). But it is undisputed that the FSA is not exclusive. During the relevant time period, Superior conducted business in other states. Thus, a technician de-authorized by Cox could be employed by Superior elsewhere or could perform duties that do not require entry into customers' homes. Indeed, both Mr. Walker and Mr. Taylor testified that they had been de-authorized by Cox but had not been terminated from Superior or Stargate. Importantly, because the contract with Cox is not exclusive, Superior is not precluded from obtaining other installation work in Louisiana. Other courts have determined that the ability to de-authorize a technician does not, on its own, amount to the authority to fire. Thornton, 2014 WL 4794320, at *14 (finding no joint employer relationship although the communication company could de-authorize a technician); Jean-Louis, 838 F. Supp. 2d at 125 (same); but see Perez, 2015 WL 3451268, at *17 (finding a joint employer relationship where the communication company

11

could de-authorize a technician pursuant to an exclusive contract with the install company). As the Thornton court explained, the ability to de-authorize a technician "was to ensure customer safety and quality of service" and did "not evidence a joint employer relationship." 2014 WL 4794320, at *14; see Zampos, ("To the extent [the communication company] plays a role in the hiring and firing process, it is only in the context of quality control, safety and security of [its] customers . . . ."). The same is true here. The de-authorization experienced by Mr. Walker and Mr. Taylor were clearly in the context of quality control and customer safety: Mr. Walker was de-authorized after he argued with an apartment manager at a Cox customer home, and Mr. Taylor was de-authorized when a background check revealed his driver's license was suspended.

Plaintiffs argue that the FSA "goes on to vest Cox with ultimate authority to 'terminate this Agreement without Notice to [Superior] and without further obligation to [Superior].'" As Mr. Gremillion argued, the Plaintiffs here maintain that "this unilateral and ultimate right is the best and most compelling evidence of the authority wielded by Cox over Superior's employment decisions." (Rec. Doc. 55, at 15). Here, too, the Court must reject this argument. Not only do Plaintiffs fail to make any connection between this FSA provision and an ability of Cox to control Superior's employment decisions, but the fact that they find this provision to be so compelling highlights how little evidence there is to support a finding of joint employment. A contractual provision allowing a company to terminate a contract with a service provider cannot possibly be interpreted as being sufficient to find authority over the service providers' hiring and firing decisions without subsuming a swath of typical independent contractor relationships.

Here, Cox's requirement that technicians entering its customers' homes pass its background check and that Superior maintain experienced and professional-appearing personnel

does not give Cox the authority to hire and fire. These specifications amount to minimal safety and quality measures. Accordingly, this factor weighs against finding a joint employment relationship.

   b. *Supervision and Control*

Cox does not supervise or control the work schedules or conditions of employment of Superior technicians. Although Cox's computer system allocates work orders to technician numbers, it is undisputed that Superior can unbundle and reassign the work orders as it sees fit. The Plaintiffs agreed that Superior and Stargate can add or change the routes assigned by Cox's auto-routing system. Further, there is no evidence that Superior must discuss such changes with Cox or obtain Cox's consent. Additionally, there is no evidence that Cox was involved with approving or scheduling technicians' time off requests. Indeed, Mr. Crosby and Mr. Taylor admitted that they contacted their supervisors at Superior or Stargate if they were sick or needed time off. Each of the Plaintiffs admitted to being supervised by Superior or Stargate personnel, not by Cox employees.

Plaintiffs point to language in the FSA providing that Cox can assign work at its discretion, but this is not evidence of Cox's ability to control the schedule or work conditions of the technicians. The cited provision appears in the context of a paragraph clarifying that Superior is not entitled to a minimum amount of work from Cox. It has no bearing on which technician is assigned a particular work order. Moreover, Superior remains able to re-assign work as it sees fit. Plaintiffs also note that the FSA requires Superior to assign work in a manner reasonably calculated to not adversely affect the quality of work. This general, non-specific provision concerns Cox's quality requirements and does not amount to involvement with or control over scheduling of technicians.

Plaintiffs further note that the FSA prohibits re-use of a technician number. Plaintiffs seem to interpret this language as preventing Superior from re-assigning work orders, but the language clearly prevents Superior from using one number for two technicians or using a terminated technician's number for a new hire. This does not indicate any control or supervision by Cox of the work schedules of Superior's technicians. As this Court has previously found, a strained reading of the FSA does not create a fact issue. Plaintiffs add that the FSA requires that Superior train its personnel on all safety, quality, and legal requirements, including Cox guidelines. This provision makes clear that it is Superior, and not Cox, that supervises and trains its technicians. It does not indicate any control by Cox over the process, even if Cox requires that its equipment be installed in certain ways.

Further, although Cox requires that Superior technicians wear clothing and drive vehicles identifying them as Cox approved, this is merely a safety measure to ensure that Cox customers know that the appropriate person is entering their home. Cox's random quality control checks and customer surveys result in feedback to Superior, not directly to the technicians. There is no suggestion by the Plaintiffs that these quality control measures amount to supervision. As the Jacobson court explained, even a high degree of supervision or control may not trigger a joint employer finding where the purpose of the control is to maintain customer safety, whereas this factor might indicate a joint employer relationship where the purpose of the control is day-to-day management. Compare Jacobson, 740 F. Supp. 2d at 691 (finding no joint employer relationship where the technicians wore communication company badges and the communication company monitored the location of technicians, specified the time they were to arrive at appointments, and regularly evaluated completed work, but the communication company had no role in developing human resources policies and did not dictate the technicians' working conditions or determine the

14

conditions upon which they would receive payment) with Perez, 2015 WL 3451268 (finding a joint employer relationship where the technicians wore communication company badges and the communication company monitored arrival and departure time, at one point required ten-hour shifts, and approved and denied time off requests); see also Smilie v. Comcast Corp., No. 07-CV-3231, 2009 WL 9139890, at *4 (N.D. Ill. Feb. 25, 2009) (holding that the communication company's requirement that the technicians meet its quality standards and wear shirts identifying them with the communication company did not establish control); Herman v. Mid-Atl. Installation Servs., Inc., 164 F. Supp. 2d 667, 672–73 (D. Md. 2000), aff'd sub nom. Chao v. Mid-Atl. Installation Servs., Inc., 16 F. App'x 104 (4th Cir. 2001) (holding that the cable company's requirement that technicians meet the cable company's installation specifications, pass background checks and wear ID badges and uniforms identifying them with the cable company were not sufficient to make technicians employees of the cable company); Santelices v. Cable Wiring, 147 F. Supp. 2d 1313, 1327–28 (S.D. Fla. 2001) (holding that the cable company was not a joint employer although the company required installers be neatly dressed and polite and required work be done according to its specifications, but there was no evidence that the cable company checked the installers' work on a daily basis, gave work commands, or otherwise intervened in the installers' duties).

Here, the purpose of identifying Cox on the technician's badge and vehicle is to ensure customer safety and the purpose of the surveys and quality control checks is to ensure satisfaction of Cox customers. These examples do not amount to day to day supervision or control of a Superior technician's schedule or working conditions. The "supervision" factor weighs against a finding that Cox is the Plaintiffs employer.

*c. Payment*

There is no dispute that Plaintiffs were paid by Superior or Stargate, not by Cox. Cox did not issue tax forms to them. And it is undisputed that Cox never deducted amounts from Superior technicians' paychecks and never instructed Superior to do so. Plaintiffs argue that the FSA's requirement that Cox pay Superior upon the full and timely completion of the services indicates Cox's control over the technician's pay. Plaintiffs also point to the FSA provision authorizing Cox to withhold payment to Superior to repair damage or related to failure of Superior to carry out services. But these provisions merely dictate when and how Cox would pay Superior. These types of provisions would commonly be seen in a contract for services and simply cannot be interpreted as giving one party authority over the other party's employees' pay. Importantly, as in Valdez, "there is no evidence Cox dictated any particular rate or pay structure to any contractor."2012 WL 1203726, at *4 (D. Nev. Apr. 11, 2012). Further, there is no evidence that payments to technicians were contingent on receiving payment from Cox. The payment factor weighs against a finding of joint employment.

*d. Employment Records*

It is uncontested that the only records Cox maintains are related to the technician badges. Plaintiffs concede that there is no evidence Cox maintained any records of their employment. This factor weighs against a finding that Cox is a joint employer.

*e. Conclusion on FLSA Liability*

The undisputed facts lead to no other conclusion but that Cox is not the Plaintiffs' employer under the FLSA. Cox's background check requirement, distribution of work orders and customer satisfaction surveys reflect no more than a legitimate contractor relationship. Cox's specifications merely reflect its concern for the services being provided to its customers. Cox's involvement in

hiring, firing, supervision, scheduling, and payment of technicians is minimal and indirect at best. The Plaintiffs disingenuously distort and exaggerate the implications of boilerplate provisions of the FSA to attempt to prove a case of joint employer status, with no evidence of actual control by Cox as a practical matter. Plaintiffs' reliance on <u>Perez</u> is similarly ill-fated because <u>Perez</u> is so easily distinguished. Instead, Cox's relationship with Superior, and its extremely limited role in the work lives of Superior technicians, is obviously much more akin to the cable and communications companies discussed in <u>Jacobson</u>, <u>Thornton</u>, <u>Valdez</u>, <u>Zampos</u>, <u>Jean-Louis</u>, <u>Herman</u>, <u>Smilie</u>, <u>Santilices</u>, and others. The law governing joint employer status is well developed in this industry. There is simply no doubt that Cox was not the Plaintiffs joint employer and there are no material issues of fact to be developed at trial. The court finds that summary judgment in Cox's favor is appropriate: Cox is not the Plaintiffs' employer under the FLSA.

3. *Liability as Employer under Louisiana Law*

Cox argues that Plaintiffs' state law claims must also be dismissed because Cox is Plaintiffs' employer. The Plaintiffs' sole remaining claim under the Louisiana Wage Payment Act ("LWPA") is under the provision prohibiting a person from "assess[ing] any fines against his employees or deduct[ing] any sum as fines from their wages." La. Rev. Stat. 23:635. Thus, Cox points out, only an employer can be liable. Louisiana courts consider a variety of factors in determining whether an individual is an employee under the Louisiana Wage Payment Act:

> (1) whether there is a valid contract between the parties; (2) whether the work being done is of an independent nature such that the contractor may employ nonexclusive means in accomplishing it; (3) whether the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) whether there is a specific price for the overall undertaking agreed upon; and (5) whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.

17

Mendoza v. Essential Quality Const., Inc., 691 F. Supp. 2d 680, 686 (E.D. La. 2010). As Cox points out, the principal factor is whether the purported employer had the ability to control the work. See Hulbert v. Democratic State Cent. Comm. of Louisiana, 2010-1910 (La. App. 1 Cir. 6/10/11), 68 So. 3d 667, 670, writ denied, 2011-1520 (La. 10/7/11), 71 So. 3d 316. Cox argues that for the reasons it is not the Plaintiffs' employer under the FLSA, it is not their employer under the LWPA. The Court agrees. The factors above related to hiring, firing, supervision, control of schedule, and pay all result in the conclusion that Cox does not have the ability to control the Plaintiffs' work. Cox is also entitled to summary judgment on Plaintiffs' state law claims because Cox is not Plaintiffs' employer.

## Conclusion

For the foregoing reasons, Cox's Motion for Summary Judgment is GRANTED and Cox is hereby dismissed with prejudice.

New Orleans, Louisiana, this 1st day of May, 2017.

                                                                  Janis van Meerveld
                                                      United States Magistrate Judge